# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

CARRIE L. MEACHAM (Formerly HAY), Respondent, v. THE NEW YORK STATE MUTUAL BENEFIT ASSOCIATION, Appellant.

*Life insurance — suicide, what facts show that it was the result of an insane impulse.*

| 46h | 363 |
| 71 AD | ¹299 |

APPEAL from a judgment entered upon a verdict rendered at the Cortland Circuit, and also from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

This action was brought to recover the amount of a certificate or policy of insurance issued by the defendant, insuring the life of the husband of the plaintiff, bearing date August 14, 1884. Charles E. Hay, the insured, committed suicide on the 23d of August, 1884, by shooting himself through the temples. His principal business had been working on a farm. The night before the suicide the deceased stayed at the house of John Hilsinger, about five miles from his own residence, and about noon on the twenty-third day of August he was at the house of Mrs. Alice King, about a mile from his own home, and about 3 P. M. on that day, at his own home, he shaved himself, changed his shirt, and wrote a letter, and there used a revolver, causing a bullet to pass through his head, causing immediate death. By the application made by the deceased, which is made a part of the contract, he agreed "to be subject to the by-laws and regulations of this association, and to pay all dues and assessments until I give the association notice of my wish to withdraw from the same, and to abstain from immorality, dissipation or the use of narcotics." By article 17, and sections 1 and 2 of the by-laws it is provided as follows: "This association does not hold itself liable for the payment of any claim when the member has died in violation of the laws of the land, or in military service in case of invasion, or immorality, dissipation, or

the use óf narcotics, or from suicide, if committed within two years from the date of the certificate of membership."

The court, after considering several objections which were raised by the defendant's counsel, and holding that they were properly submitted to the jury, and that the exceptions taken to the charge should not be sustained, said: " The defendant insisted upon the trial that there was a breach of the certificate because the deceased committed suicide. The language used by the defendant in its by-laws is as follows: ' This association does not hold itself liable for the payment of any claim when the member has died in violation of the laws of the land, * * * or from suicide, if committed within two years from the date of certificate of membership.' It has recently been held by the third department that suicide is not a violation of the Penal Code. (*Darrow* v. *Family Fund Society*, 42 Hun, 245 ; *Freeman* v. *The National Benefit Society of New York*, 42 id., 252.) So far as it is important to pass upon the question here, we content ourselves with following those cases. In *Van Zandt* v. *The Mutual Benefit Life Insurance Company* (55 N. Y., 169), it was held that to take a case out of a stipulation essentially like the one before us, ' on the ground of insanity, the insured must have been so mentally disordered as not to understand that the act that he committed would have caused his death, or he must have committed it under the influence of some insane impulse which he could not resist.' In *Newton* v. *The Mutual Benefit Life Insurance Company* (76 N. Y., 426), it was held, viz. : ' Where a person who, although aware that a certain act will terminate his life, yet does the act under the control of an insane impulse caused by disease and derangement of his intellect, which deprives him of the capacity of governing his own conduct in accordance with reason, the act cannot be regarded as voluntary. Such an act, therefore, is not within the provision of a policy of life insurance avoiding it in case the insured ' die by his own hand.'

" We think the trial judge followed the cases to which we have alluded in laying down the law to the jury in regard to the defense insisted upon by the defendant as to suicide. We also think that the evidence was sufficient to warrant the jury in finding ' that he acted under the control of an insane impulse, caused by disease and derangement of his intellect, which deprived him of the capacity of

governing his own conduct in accordance with reason.' (RAPALLO, J., in *Newton* v. *Mutual Benefit Life Ins. Co., supra.*) It is strenuously insisted that such finding is against the evidence. It was held otherwise at the Special Term, and, we think, correctly. The solution of the question turns largely upon the interpretation of the facts and circumstances attending the conduct of the deceased just before and at the time of committing suicide. We are of the opinion that the letter of August 23, 1884, written by the deceased to his wife, is strong evidence supporting the conclusion reached by the jury. In the letter the deceased says, among other things: 'But this voice says, die now. Darling, don't give this revolver away until Clare is big enough to take care of it; then give it to him and tell him its history. * * * Oh, that voice is calling me. I think it is mother's. Now, darling, I bid you and all my friends and the little darlings an affectionate farewell forever, hoping we shall all meet in a fairer world than this, where everybody is our friends. Now, wishing you all farewell, I am no more your unworthy husband, but almost a corpse. Good bye, darling. Charlie E. Hay.' What mind in a normal condition could suggest that a revolver which was used to take the life of a parent, should be preserved as a keepsake for a child of the party using it? What is there in the letter itself other than a betrayal of an 'insane impulse, caused by disease and derangement of an intellect which deprived him of the capacity of governing his own conduct in accordance with reason.' We think the jury was warranted in coming to the conclusion which it did on this branch of the case.

"The learned counsel for the appellant calls our attention to *Smith* v. *The Ætna Life Insurance Company* (49 N. Y., 211), which declares that it is the duty of the General Term to set aside a verdict which is against the clear weight of evidence. We recognize the force of that authority, but we deem it wholly inapplicable to the case before us, as we are of the opinion that the verdict given is in keeping with the strong features of the evidence on the subject of insanity. The trial judge correctly laid down the law with regard to this branch of the case, and gave the question cautiously and elaborately to the jury for its determination. We think it the duty of this court to accept the verdict. These views lead to the

conclusion that no error occurred upon the trial, or in denying the motion for a new trial made upon the judge's minutes.

Judgment and order affirmed, with costs."

*Fuller, Fuller & Cook,* for the appellant.

*A. P. & D. C. Smith,* for the respondent.

Opinion by HARDIN, P. J.; FOLLETT, J., concurred; MARTIN, J., not sitting.

Judgment and order affirmed.